CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
July 23, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JEREMY DEFOUR,** | ) |
| Plaintiff, | ) Case No. 7:24-cv-00284 |
| v. | ) **MEMORANDUM OPINION** |
| **SGT. J. BENTLEY, et al.,** | ) By: Pamela Meade Sargent |
| | ) United States Magistrate Judge |
| Defendants. | ) |

The pro se plaintiff, Jeremy DeFour, ("DeFour"), is a Virginia Department of Corrections, ("VDOC"), inmate housed at Red Onion State Prison, ("Red Onion"), during the time period relevant to his claims. DeFour sued Sgt. J. Bentley, Warden Rick White and Major J. Hall, employees of the VDOC, under 42 U.S.C. § 1983 for violation of his First Amendment rights. The case was transferred to the undersigned on September 20, 2024, by the consent of the parties pursuant to 28 U.S.C. § 636(c). (Docket Item No. 21.) Thereafter, the parties entered into a written settlement agreement, ("Settlement Agreement"), and the court dismissed this action but retained jurisdiction to enforce the terms of the Settlement Agreement by Order entered on February 26, 2025. (Docket Item No. 50.) On March 24, 2025, DeFour filed a Motion To Enforce Terms Of Settlement Agreement, ("Motion"), wherein he alleged that the VDOC had not fulfilled its obligations pursuant to the Settlement Agreement by not reducing his security level after dismissing five disciplinary convictions. (Docket Item No. 51.) The VDOC, on behalf of the defendants, responded to the Motion, indicating that it had fulfilled the terms of the Settlement

Agreement and that it was not required to reduce DeFour's security level under the Settlement Agreement. (Docket Item No. 52) (VADOC's Response In Opposition To Motion To Enforce Settlement Agreement, ("Response")). The undersigned conducted an evidentiary hearing on the Motion on June 2, 2025.

## I.   Facts

On February 6, 2025, the parties entered into a Settlement Agreement. (Docket Item No. 51-1.) The Settlement Agreement provided that the VDOC would dismiss the following disciplinary charges against DeFour within 30 days of execution of the Settlement Agreement: BKCC-2022-0849 (Offense Code 105B), BKCC-2022-0614 (Offense Code 212), ROSP-2022-1763 (Offense Code 212), ROSP-2023-0710 (Offense Code 241B) and ROSP-2024-0923 (Offense Code 129). DeFour argues that the defendants violated the terms of the Settlement Agreement when they dismissed his disciplinary convictions but did not restore his security level to its pre-conviction status. DeFour argues that it is the custom, policy and practice of the VDOC to lower an inmate's security level when disciplinary convictions are dismissed. He argues that, typically, if a disciplinary conviction imposed a fine, a stint in restorative housing unit, ("RHU"), or a loss of a privilege as a direct penalty of the conviction, the punishment is reversed. Additionally, he argues that if an inmate loses his job due to a disciplinary conviction that is subsequently dismissed, the VDOC pays an inmate for his unpaid work hours.

At the June 2 hearing, DeFour testified that he had been incarcerated at Red Onion since September 2022. He previously was incarcerated at Buckingham Correctional Center, ("Buckingham"), from approximately July 2020 to September 2022, where he was classified as a security level 3. DeFour was charged with two

disciplinary infractions at Buckingham: BKCC-2022-0849 (Offense Code 105B) and BKCC-2022-0614 (Offense Code 212). DeFour was convicted of both disciplinary infractions, and, as a result, an Institutional Classification Authority Hearing Review was conducted on July 28, 2022, at which DeFour was reclassified to a security level 5. (Docket Item No. 57-1.) As a result of the security level increase, DeFour was recommended to be transferred to a higher security facility, because Buckingham could not house security level 5 inmates. (Docket Item No. 57-1.) The findings of the Institutional Review were finalized on August 1, 2022, and DeFour was transferred to Red Onion in September 2022. After his arrival at Red Onion, DeFour incurred three more disciplinary charges: ROSP-2022-1763 (Offense Code 212), ROSP-2023-0710 (Offense Code 241B) and ROSP-2024-0923 (Offense Code 129). DeFour also was convicted of two additional disciplinary charges, a 111A charge in 2024 and a 121 charge in 2022, which are not part of the Settlement Agreement.

In support of his assertion that it is the typical practice of the VDOC to restore an inmate's security level to pre-conviction status when disciplinary charges are dismissed, DeFour submitted two Institutional Classification Authority Hearing Reviews, ("DOC-11H"), for inmates at Red Onion. Both documents were stipulated into the record and are filed under seal. The first DOC-11H is a record of an inmate who received a 103 charge that subsequently was dismissed, resulting in the cancellation of his pending transfer to the higher security facility, Red Onion. (Docket Item No. 62.) The second DOC-11H reflects an inmate whose security level was reduced from a security level 5 to a security level 3, resulting in a recommended transfer to a lower security facility. The second DOC-11H also indicates that the inmate was recommended for transfer, in part, "to receive aftercare programming for substance use disorder." (Docket Item No. 67 at 6.)

DeFour also testified regarding his DOC-11H Reclassification Security Level Scoresheet. (Docket Item No. 52-1 at 6-8.) DeFour's DOC-11H, dated March 18, 2025, computed a total point score of 38, placing him at a security level 5. (Docket Item No. 52-1 at 6-8.) A sworn declaration submitted by B. Buenaga, Classification Supervisor of Central Classification Services of the VDOC, states that DeFour's first objective security point score, calculated on March 18, 2025, after the VDOC dismissed the disciplinary charges agreed to in the Settlement Agreement, was miscalculated. (Docket Item No. 52-1 at 2.) DeFour's score then was recomputed on March 26, 2025, due to a computing error providing the previous score of 38, and DeFour scored six points, classifying him at a security level 2, which then was increased using a Discretionary H-6 Override, placing him at a security level 4, for an ultimate reduction in security level from 5 to 4. (Docket Item No. 52-1 at 11-13.) Buenaga states that the VDOC conducts "annual reviews of each inmate's security level to provide the inmate with the opportunity for systematic decrease in supervision, while fostering a corresponding increase in inmate responsibility to allow the inmate to benefit from additional programmatic, educational, and work opportunities." (Docket Item No. 52-1 at 2-3.) Buenaga further states that "[d]ismissal of disciplinary infractions does not make an inmate automatically suitable for a lower security level or a transfer to another institution." (Docket Item No. 52-1 at 5.) Buenaga states that "[d]etermining a person's security level is not simply a matter of an objective point score," and cites additional factors listed in VDOC Operating Procedure 830.2, *Security Level Classification*, Part III, ("O.P. 830"), that must be considered, such as information in the Pre-Sentence Investigation, criminal history, institutional adjustment, nature of the offense(s) and time to serve. (Docket Item No. 52-1 at 5.) Regarding Discretionary Overrides, O.P. 830.2 states, "[a]ny inmate who scores within any security level may have their security level assignment changed based on one of the Discretionary Overrides,

which relate to an inmate's suitability for a particular security level." (Docket Item No. 69-1 at 8.) On cross examination, DeFour conceded that O.P. 830.2, admitted as Plaintiff's Exhibit No. 1, states, "security level classification decisions involve the assessment of each case based on a determination of eligibility, suitability, and acceptability." DeFour agreed that "suitability" was defined in O.P. 830.2 as "a reasoned professional judgment regarding an inmate's ability to perform at a certain security level or institutional environment" and called for "discerning judgment relative to length of sentence, crime, prior record, as well as sociological, medical, and psychological considerations." DeFour testified that he was incarcerated for armed robbery and amphetamine possession, among other convictions, and that he received a custodial sentence of 41 years. DeFour testified that his estimated good time release date is in approximately 11 years. DeFour further testified that "acceptability" is defined in O.P. 830.2 as "the level of acceptance of an inmate by the community, length of sentence, and nature of crime," among other things. DeFour agreed that O.P. 830.2 outlines three components that go into determining an inmate's security level: eligibility, or the basic objective score; suitability; and acceptability. DeFour agreed that no VDOC policy states that an inmate's security level must revert back to pre-conviction status and that the VDOC conducts an individualized assessment of each inmate before assigning them a security level.

DeFour agreed that the Settlement Agreement contains a statement indicating that it is "deemed to have been made within the Commonwealth of Virginia and shall be interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Virginia." DeFour also agreed that the Settlement Agreement states, "[t]his agreement constitutes the entire understanding and agreement between the parties with respect to its subject matter. The agreement supersedes all other understandings, agreements, communications, or negotiations, whether written or

oral, between the parties with respect to such subject matter." DeFour further agreed that the Settlement Agreement states, "[t]his agreement may not be amended, changed, or altered, except via writing signed by the parties" and agreed that the parties have not amended the Agreement. DeFour testified that Defense Exhibit No. 1 is a letter dated August 22, 2024, in which he tendered proposed settlement terms to defendants. In this letter, DeFour tendered four proposed terms:

> 1) Dismiss and expunge all disciplinary reports starting from May 2022 to the current[;]
> 2) [Change his Good Conduct Allowance to] Level 1 from May 2022 to the current[;]
> 3) Transfer to security level 3 (Lawrenceville, Buckingham, Powhatan, Nottoway)[; and]
> 4) Pay [him] the amount of $15,000[.]

(Docket Item No. 69-2 at 2.) DeFour testified that Defense Exhibit No. 2 is a letter dated January 24, 2025, in which he tendered proposed settlement agreement terms to defendants. In this letter, DeFour proposes similar terms to his August, 22, 2024, letter:

> 1. Dismiss the following Disciplinary Infractions and remove all mention from [DeFour's] institutional record[:]
> A. Threat to Aggravatedly Assault Bates – May 26, 2022[,] Case No. BKCC-2022-0614[;]
> B. Aggravated Assault on Inmate – May 31, 2022[,] Case No. BKCC-2022-0849[;]
> C. Threatening Bodily Harm to Bentley – September 19, 2022[,] Case No. ROSP-2022-1763[;]
> D. False Claim Against Staff Shirks – October 7, 2022[,] Case No. ROSP-2022-2089[;]
> E. Possession of [Paraphernalia] for Intoxicants – March 12, 2023[,] Case No. ROSP-2023-0710[;]
> F. Threatening Bodily Harm – March 22, 2024[,] Case No. ROSP-2024-0923[; and]

> G. Intentionally Destroying Property – February 14, 2024[,] Case No. ROSP-2024-0465[.]
>
> ….
>
> 4. Conduct an Administrative Review [and] transfer [] back to security level 3 (Lawrenceville).

(Docket Item No. 69-3 at 5-6.) DeFour testified that Defense Exhibit No. 3 is a transcript of a February 3, 2025, telephone conference between the parties and the court. DeFour agreed that during the telephone conference, he stated:

> [L]ike [defense counsel] said, they agreed to dismiss certain offenses, but there's just a couple that I need dismissal for when we come to an agreement as well and transfer back to security level 3 because once these disciplinary infractions are taken care of, then I should revert back to my standard before all of these charges came.

(Docket Item No. 69-4 at 3-4.) In response to DeFour's affirmative answer to the court's query whether he "[wanted] a reduction to security level [3]," counsel for the defendants stated, "[a]dding the transfer to level [3] was not in the proposal … so I haven't taken that to the [d]epartment at all." (Docket Item No. 69-4 at 4, 5.) DeFour testified that Defense Exhibit No. 4 is a letter he wrote to defendants' counsel March 10, 2025, in which he stated, "I am writing regarding [an] issue discussed during settlement negotiation which did not eventually become any formal term." (Docket Item No. 69-5 at 1.) DeFour testified that during settlement negotiations and on the conference call with the court, he specifically requested a transfer back to a security level 3 facility. DeFour testified that, initially, he requested to be transferred to a specific facility, but, later, he requested transfer to any level 3 facility. DeFour testified that, while he understood that his transfer to a specific level 3 facility was not included in the final Settlement Agreement, he believed that a reduction in his

security level and subsequent transfer to a lower security facility would be a natural consequence of the dismissal of his disciplinary charges. DeFour argued that, since he was transferred from Buckingham to Red Onion as a result of the disciplinary charges that ultimately were dismissed, to be made whole by the Settlement Agreement, he should be transferred back to a lower security facility. DeFour argues that because the VDOC was aware of his desire for a security level reduction, the defendants were obligated to inform him that they did not intend to reduce his security level. Defendants argue that the Settlement Agreement does not require the VDOC to adjust DeFour's security level or to transfer him.

## *II. Analysis*

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Lab., Inc.,* 277 F.3d 535, 540 (4th Cir. 2002). "[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Hensley,* 277 F.3d at 540-41 (citing *Moore v. Beaufort County, North Carolina,* 936 F.2d 159, 162 (4th Cir. 1991); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)). When a factual dispute regarding the terms of the settlement arises, the court cannot summarily enforce the agreement and, instead, must "conduct a plenary evidentiary hearing in order to resolve that dispute." *Millner v. Norfolk & W. Ry. Co.,* 643 F.2d 1005, 1009 (4th Cir. 1981). After the evidentiary hearing, "[i]f a district court concludes that no settlement agreement was reached or that agreement was not reached on all material terms, then it must deny enforcement." *Hensley*, 277 F.3d at 541. "A district court's determination that the parties reached a partial settlement agreement won't cut it; if the parties didn't have a meeting of the minds on all the material terms of the

agreement, 'any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial.'" *Smith-Phifer v. City of Charlotte*, 118 F.4th 598, 610 (4th Cir. 2024) (emphasis omitted) (quoting *Ozyagcilar*, 701 F.2d at 308).

The term in dispute in the parties' Settlement Agreement states that the VDOC "shall, within thirty (30) days of full execution of this Agreement, dismiss Mr. DeFour's disciplinary conviction in BKCC-2022-0849 (Offense Code 105B); BKCC-2022-0614 (Offense Code 212); ROSP-2022-1763 (Offense Code 212); ROSP-2023-0710 (Offense Code 241B); and ROSP-2024-0923 (Offense Code 129)." (Settlement Agreement at 1.) "[Q]uestions of settlement-agreement enforceability are governed by federal common law, not state law." *Smith-Phifer*, 118 F.4th at 610 n.10. Virginia law governs the interpretation of the Settlement Agreement's terms because Virginia and federal common law recognize choice of law provisions, and the parties agreed that Virginia law would govern interpretation of the Settlement Agreement. *See Smith-Phifer*, 118 F.4th at 610 n.10; *Philpot v. Indep. J. Rev.*, 92 F.4th 252, 264-65 (4th Cir. 2024). However, "whether a complete settlement agreement was reached is a question of enforceability because it 'implicate[s] federal procedural interests'" that make an enforceability action "'distinct from the underlying substantive interests of the parties.'" *Smith-Phifer*, 118 F.4th at 610 n.10 (quoting *Gamewell Mfg., Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 115 (4th Cir. 1983)). In determining whether the parties reached a complete agreement, the court looks to the "objectively manifested intentions of the parties." *Moore,* 936 F.2d at 162.

The parties do not dispute that the VDOC has dismissed the disciplinary charges listed in the Settlement Agreement. Instead, plaintiff asserts that the VDOC

also has an obligation under the terms of the Settlement Agreement to reduce his security level back to the level it would be had he not received the disciplinary charges. "The party seeking to enforce the settlement agreement has the burden to prove that there is an agreement and its terms." *Bralley v. Carey*, 2010 WL 4668936, at *2 (E.D. Va. Nov. 12, 2010) DeFour's argument relies upon the assumption that a reduction in security level naturally accompanies the dismissal of disciplinary charges. This assertion falls flat, however, based on the evidence that DeFour explicitly bargained for, and the VDOC ultimately rejected, the inclusion of the reduction of DeFour's security level as a term of the final Settlement Agreement. DeFour did not produce evidence that he could be transferred to a level 3 facility without first receiving a reduction in his security level to a level 3. Therefore, the court views his request to be transferred to a level 3 facility to be synonymous with his desire for his security level to be reduced. In contrast, DeFour was unable to produce evidence that the VDOC was obligated to lower his security level after dismissing the disciplinary charges. DeFour argues that the VDOC did not act in good faith when it did not reduce his security level back to his pre-disciplinary conviction state after the disciplinary charges were dismissed. But, "[a]n implied duty of good faith cannot be used to override or modify explicit contractual terms." *Riggs Nat. Bank of Wash., D.C. v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994). In other words, "the doctrine of good faith performance is a means of finding within a contract an implied obligation not to engage in the particular form of conduct which … constitutes 'bad faith.'" *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C. Cir. 1984). The VDOC has presented evidence that an inmate's security level score is not based exclusively on a computed point score. Instead, an inmate's security level assessment is based on a multitude of factors considered during an individualized assessment of each inmate. It is clear to the court that the VDOC *could* have chosen to reduce DeFour's security level after the disciplinary charges were dismissed, but

it was not obligated to do so under either the terms of the Settlement Agreement or its own Operating Procedures. In this case, the VDOC justified assigning DeFour a security level 4 when his calculated point score was lower because he "[n]eed[ed] to establish stable adjustment in a general population and/or at recommended security level prior to consideration for a lower level." (Docket Item No. 52-1 at 13.) A party to a contract is not bound by what the other party would like them to do, only what they are obligated to do. While DeFour claims that the VDOC knew he wanted a reduction in his security level, and the evidence shows that the VDOC was aware of his desire, Virginia courts "ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." *Phillips v. Mazyck*, 643 S.E. 2d 172, 175 (Va. 2007). In this case, it is clear that the parties expressly considered the reduction in security level as a term of the contract but, ultimately, decided that it would not be included in the Settlement Agreement.

## CONCLUSION

Based on the above-stated reasons, I do not find that the VDOC is obligated to reduce DeFour's security level pursuant to the terms of the Settlement Agreement.

Accordingly, DeFour's Motion is **DENIED.**

ENTERED: this 23rd day of July, 2025.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE